RUBEN, Appellant, vs. RAASCH, Respondent.

*December 4, 1928—January 8, 1929.*

532

For the appellant there was a brief by *Shaw, Muskat & Sullivan,* attorneys, and *John S. Barry,* of counsel, all of Milwaukee, and oral argument by *Mr. Barry.*

For the respondent there was a brief by *Brennan, Lucas & McDonough* of Milwaukee, and oral argument by *Martin J. Brennan.*

OWEN, J. The plaintiff, David Ruben, and Herman Glass were acquaintances and friends. Ruben was the owner of an automobile which Herman Glass frequently drove. On the evening of November 15, 1926, Ruben and Glass, each accompanied by a young lady, met in a downtown district in Milwaukee. The four attended a show, after which they had a lunch at a restaurant. They started home in plaintiff's automobile. The lady friend of Ruben lived at Twenty-ninth and Galena streets. When they arrived at her home she and the plaintiff got out of the car, and Glass took his lady friend home in the car with Ruben's acquiescence and permission, promising to stop for Ruben on his way back. Whether plaintiff voluntarily offered Glass the use of the car or permitted its use at the request of Glass, we deem immaterial. On the way back plaintiff's car, driven by Glass, collided with the defendant's car. Ruben brought this action to recover for the damages resulting to his car, and the defendant counterclaimed for his damages. The jury found Glass negligent, and that, in driving the car, he was acting for and on behalf of the plaintiff. They found the defendant free from negligence, and judgment was awarded in favor of the defendant and against the plaintiff on defendant's counterclaim.

Upon appeal in the circuit court plaintiff contended that Glass was not acting for or on his behalf in driving the car, and that he was not responsible for the negligence of Glass. The circuit judge wrote an opinion holding that, as the plaintiff had voluntarily favored Glass and his lady companion with automobile transportation to Galena and Twenty-ninth streets, which was only part of the way to the home of the lady companion of Glass, he incurred a social obligation to continue such transportation to that lady's destination, and that if, instead of driving the automobile himself, he saw fit to delegate the performance of that social obligation to Glass, then Glass was acting for and on behalf of the plaintiff, and affirmed the judgment of the civil court. No question is raised in this court with reference to the verdict of the jury concerning the negligence of the respective drivers of the automobiles. The only question raised here is whether Glass, in driving the plaintiff's automobile, was acting for and on behalf of the plaintiff.

Our solution of the question presented leads us, as it led the circuit judge, into a survey of contemporary social ethics. Not only our own observation, but much that has been said and written, warns us that the spirit of progress has established different, if not higher, ideals in the social customs of young people. We realize that we may subject ourselves to criticism in interpreting these present-day customs in the light of standards prevailing a half century back, and we should hesitate to differ with the conclusions of the learned circuit judge could we appreciate his superior aptitude in this field of inquiry. But as we regard his views and experience no less venerable than our own, we shall undertake our own solution of the problem, not too much embarrassed by his finding.

We feel that we are on safe ground in assuming that the ordinary social amenities even of the present impose upon the young man who entertains his lady friend at the theater the duty to see her safely home. More than that, the doctrine

of *caveat emptor* applies in full force to the ambitious swain who essays to relieve him of that duty. It.seems clear that, as they left the theater, the duty devolved upon Glass to provide means and ways of conveying his lady friend to her home. At that time the plaintiff owed no duty in that behalf. In order to sustain the judgment it is necessary to determine when and how that duty was transferred to the plaintiff. If, as seems probable, the plaintiff said to Glass, when they left the down-town district, "You can ride with me until we get to Twenty-ninth street, then take the car and take your lady friend home, stopping for me upon your return," there can be no question that the plaintiff's proffer of the use of his car was a matter of courtesy to Glass and not the discharge of any duty he owed to either Glass or to the lady. We say it seems probable that some arrangement of this kind was made before they left the down-town district. This would seem likely, because Glass would not accept a ride to Twenty-ninth street without knowing how he was to cover the rest of the distance to the home of his lady friend. However, if he did accept an invitation to ride to Twenty-ninth street without any understanding as to how he was to cover the rest of the distance, he had a problem facing him upon arrival at Twenty-ninth street. But this was his problem. It was not the plaintiff's problem. If they arrived at Twenty-ninth street without any understanding upon the subject, plaintiff's proffer of his automobile at that point was still a matter of pure courtesy on his part,—a courtesy extended to Glass. The duty devolved on Glass all the time to see his lady friend home. It was his duty to provide the means of conveyance. If he obtained the conveyance from plaintiff, it was the result of a pure courtesy extended to him by the plaintiff. It is not generally considered that the automobile driver who proffers a ride to the pedestrian assumes the duty or obligation of carrying the pedestrian to his destination. The proffer of the automobile

to Glass for the purpose of completing the journey, whenever made, was a mere courtesy, was in no sense the discharge of a duty, social or otherwise, and at· the time of the collision the automobile was not driven for or on behalf of the plaintiff.

*By the Court.*—Judgment reversed, and cause remanded with instructions to the circuit court to reverse the judgment of the civil court.